UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAAMI MUHAMMAD,

        Plaintiff,

v.

FORD MOTOR COMPANY,

        Defendant.
_____/

Case No. 11-12694

HON. AVERN COHN

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION TO AFFIRM ADMINISTRATIVE DECISION IN**
**ERISA-GOVERNED ACTION (Doc. 14)**
**AND**
**DISMISSING CASE**

### I. Introduction

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA).[1] Plaintiff Jaami S. Muhammad,[2] is suing his former

---

[1] Although the complaint claims (1) breach of contract and (2) unjust enrichment, defendant removed the case to federal court on the grounds that plaintiff's state law claims are preempted by ERISA. Indeed, it is clear that plaintiff's claims, in which he seeks to recover medical, dental and vision benefits allegedly due under an employer sponsored employee welfare plan as defined under ERISA, are preempted. See Marks v. Newcort Credit Group, Inc., 342 F.3d 444, 453 (6th Cir. 2003). Plaintiff's claims are more accurately characterized as claims under ERISA §501(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), which provides that "a civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan." Id. As such, plaintiff's state law claims are DISMISSED. The case will go forward under ERISA.

[2] Plaintiff is proceeding pro se.

1

employer, defendant Ford Motor Company (Ford), claiming that Ford wrongfully determined that his claimed dependents were ineligible for benefits and, as a consequence, wrongfully collected for benefit overpayments. During his employment, plaintiff received health care benefits under the Ford-UAW Health Care Insurance Plan (Plan) which included coverage under the Hospital-Surgical-Medical-Drug-Dental-Vision (H-S-M-D-D-V) Insurance Program for himself and eligible dependents. As will be explained, Ford periodically conducts dependent benefit audits during which it requests employees to provide documentation to substantiate the eligibility of their claimed dependents under the Plan. During audits conducted in 2000, 2001, 2003 and 2007, plaintiff did not provide the documentation requested to verify his dependents' eligibility. As a result, Ford denied eligibility and removed several of plaintiff's claimed dependents from coverage. Because plaintiff was responsible for repaying the resulting benefit overpayments, Ford also withheld $100 from each of plaintiff's paychecks benefit overpayments were repaid in full.

The matter is before the Court on Ford's motion to affirm the administrative denial of plaintiff's claims, to which plaintiff responded.[3] The Court held argument on the motion on January 1, 2012.[4] For the reasons that follow, Ford's motion will be

---

[3]On November 2, 2011, the Court entered a scheduling order requiring plaintiff to file a response to Ford's motion by December 2, 2011. (Doc. 15). On December 1, 2011, plaintiff filed a paper styled "Motion for Summary Disposition by the Plaintiff." (Doc. 16). The Court construes this filing as a response to Ford's motion.

[4]Plaintiff submitted several documents to the Court at the hearing. The Court has reviewed the documents and finds nothing in them which alters the decision. Indeed, a few of the documents are already part of the administrative record which has been reviewed. The balance of the documents are not relevant to plaintiff's claims.

granted and judgment will enter in favor of Ford.

## II.  Legal Standard  -  Motion for Entry of Judgment

In <u>Wilkins v. Baptist Healthcare System, Inc.</u>, 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in the Sixth Circuit in denial of benefits actions under ERISA.  In <u>Wilkins</u>, the court of appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense.  150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in <u>Wilkins</u>[5] by rendering findings of fact and conclusions of law based solely upon the

---

[5]  The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a <u>de novo</u> review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly.  The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
150 F.3d at 619.

administrative record.[6]  See Eriksen v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

### III.  Standard of Review

Ford is correct that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because Ford has discretionary authority to construe and interpret the plan.[7]  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991).  This standard is the "least demanding form of judicial review."  Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999).  This requires "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues."  McDonald v. W.-S. Life Ins. Co., 347 F.3d 161, 172 (6th Cir.2003).  The plan administrator's decision should be upheld if it is "the result of a deliberate, principled

---

[6]The administrative record was filed with the Court.  Doc. 11.  Citations to the administrative record will be "AR," followed by the corresponding numbered page.

[7]The Plan, excerpts of which are in the administrative record, contains the following language granting discretion to the Plan Administrator to interpret the language of the Program and determine eligibility for and entitlement to Program benefits:
> The Plan Administrator shall have full power and authority to administer the H-S-M-D-D-V Program, and to interpret its provisions, including, but not limited to, discretionary authority to determine eligibility for and entitlement to Program benefits, subject only to an arbitrary and capricious standard of review.
>                           . . .
> The Company shall have the right of determining eligibility of a dependent, consistent with the provisions of this Program.

(AR 0186, 0180).

4

reasoning process" and "supported by substantial evidence." Glenn v. MetLife, 461 F.3d 660, 666 (6th Cir. 2006), aff'd, Met. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). The standard, although deferential, is not "inconsequential." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Id.

The Sixth Circuit has made clear that a court is to consider several factors in reviewing a plan administrator's decision, including the existence of a conflict of interest, the plan administrator's consideration of a Social Security Administration determination, and the quality and quantity of medical evidence and opinions. Glenn, 461 F.3d at 666. Here, because the same entity funds and administers the Plan, this conflict of interest will be taken account in determining whether the Plan acted arbitrarily or capriciously.

## IV.  Findings of Fact

The following facts are gleaned from the administrative record.

Plaintiff was employed by Ford at its Livonia Transmission facility from 1963 until he accepted a "buy-out" and voluntarily terminated his employment under the Enhanced Special Termination of Employment Program ("ESTEP"), effective January 1, 2007. (AR 0301-0304).  During his employment, plaintiff received health care benefits under the Plan, which included coverage under the H-S-M-D-D-V Insurance Program for himself as the primary enrollee, as well as his eligible dependents.  (AR 0301-0304, 0173-0219).

## A. Relevant Plan Provisions

Under the Plan, Ford has "the right to determine the eligibility of a dependent, consistent with the provisions of th[e] Program." (AR 0180 at §10(a)(3)). The Plan defines a "dependent" as one for whom the primary enrollee may legally claim an exemption under Section 151 of the Internal Revenue Code for federal income tax purposes. (AR 0180 at §10(a)(1)). The "spouse" of a primary enrollee is eligible for dependent coverage until "the date of the final decree of divorce." (AR 0181 at §10(b)(1), (4)(ii)). The "child" of a primary enrollee is eligible for dependent coverage only if he or she (I) has the proper legal relationship with the primary enrollee or his or her spouse; (ii) has not reached the end of the calendar year in which he or she turns 25 years-old (unless the child is totally and permanently disabled); (iii) is unmarried; (iv) resides with the primary enrollee or the primary enrollee is legally responsible for the provision of health care for the child; and (v) is dependent upon the primary enrollee or there is a court order stipulating that the primary enrollee is responsible for providing health care coverage for the child. (AR 0181 at §10(c)(1)). A child ceases to be eligible for coverage as of the last day of the calendar year in which the child turns 25 or the last day of the month in which the child either ceases to be dependent upon the primary enrollee or ceases to meet the residency requirement. (AR 0181 at §10(c)(4)).

Ford also has the right under the Plan to request documentation to substantiate the eligibility of claimed dependents and to deny eligibility for refusal or failure to furnish such documentation. According to the Plan, the primary enrollee "shall" furnish "any … documentation that may be necessary to substantiate the claimed eligibility of a

6

dependent." (AR 0180 at §10(a)(4)(ii)). "Refusal or failure to furnish … any … documentation necessary, when requested to do so, shall result in denial or withdrawal of eligibility for such dependent." (AR 0181 at §10(a)(4)(ii)).

Ford also has the right under the Plan to deduct from an employee's paycheck the amount of any benefit overpayment that results from the employee's failure to remove a claimed dependent no longer eligible under the Plan. "Employees have a responsibility to notify the [National Employee Services Center] NESC[8] of changes in dependent eligibility." (AR 0231). Employees are warned that "[i]f it is determined that an act (such as adding a person not eligible under the Plan) or omission (for example, failing to remove a person no longer eligible under the Plan) of an employee, retiree or enrollee results in or contributes to an overpayment under this Program, the employee shall repay the amount of over payment within 60 days." (AR 0231, 0217). In such cases, "[t]he Company shall have the right to make, or arrange to have made, deductions for recovering such overpayments from any present or future compensation or benefits payable under the Ford H-S-M-D-D-V Program which are or become payable to such primary enrollee." (Id.).

### B.  Ford's Audits

#### 1.  The 2000 Audit - Claimed Dependents Ages 20-25

In 2000, Ford sent plaintiff an audit letter requesting verification of the eligibility, i.e. a copy of plaintiff's federal income tax return and proof of residency, for his claimed

---

[8]According to Ford, the NESC is a centralized Human Resources activity that provides various services to Ford's salaried and hourly employees throughout the United States.

dependents between the ages of 20 to 25: Luqman Muhammad, Waaritha Muhammad, and Ibn-Jaami Muhammad. (AR 0013, 0015, 0153). When plaintiff failed to provide the requested documentation proving their eligibility for the time period of 01/01/2000 to 12/01/2000, Ford removed Luqman, Waaritha, and Ibn-Jaami from plaintiff's coverage effective December 1, 2000. (AR 0014, 0152). Ford then sent plaintiff a letter advising him that, because he did not provide the requested documentation and did not remove his claimed dependents once they were no longer eligible for coverage, he was responsible for paying the benefit overpayment of $5,273.79. (AR 0003-0006, 0012-0013). Plaintiff did not respond to this letter. Thereafter, $100 was deducted from his paychecks until the $5,273.79 was paid in full. (AR 0003).

### 2. The 2001 Audit - Claimed Dependent Approaching Age 20

In 2001, Ford conducted an audit of all claimed dependents reaching the age of 20 in 2001. As part of that audit, Ford sent plaintiff a letter requesting that he provide documentation (proof of residency and copy of 2000 federal income tax return) to support the eligibility of his claimed dependent, Mustafa Muhammad. (AR 0024, 0150). Plaintiff did not provide the requested documentation. Ford removed Mustafa from plaintiff's benefit coverage on August 1, 2001. (AR 0143). On September 4, 2003, Ford sent plaintiff a letter advising him that, because he did not provide the requested documentation to support Mustafa's eligibility for 01/01/2000 to 08/01/2001, he was responsible for paying the benefit over-payment of $3,312.46. (AR 0019-0023, 0143). Plaintiff did not respond to this letter. Thereafter, $100 was deducted from his paychecks until the $3,312.46 was paid in full. (AR 0017).

### 3. The 2003 Audit - Claimed Dependent Spouse and Child Over 5

As part of its 2003 audits, Ford sent plaintiff letters requesting documentation (a copy of plaintiff's 2002 federal income tax return and proof of residency for dependents age 5 and older) to verify eligibility for benefit coverage for his claimed dependents: Halima Yousri, his wife, and his daughter Fatimah Muhammad.  (AR 0144-0145). Plaintiff again did not provide documentation.  Accordingly, on July 1, 2003, Ford removed both plaintiff's spouse, Halima Yousri, and his daughter, Fatimah Muhammad, from coverage because he failed submit the requested documentation to prove their eligibility for the time period of 01/01/2000 through 07/1/2003.  (AR 0010).

On December 8, 2003, and again on January 7, 2004, Plaintiff's union representative, Dan Radley, contacted Ford to inquire as to what documentation was needed to reinstate coverage for plaintiff's dependents. (Id.).  He was advised that plaintiff needed to provide (1) a copy of his 2002 federal income tax return (1040) and (2) proof of his spouse's residency (current driver's license or State ID). (Id.).

On January 13, 2004, Ford received a copy of plaintiff's 2002 tax return, which identified plaintiff's filing status as "Single" and did not list any dependents. (Id.). Plaintiff was informed that, for his spouse to be reinstated, he needed to provide an amended tax return with the correct filing status.  (Id.).

On August 24, 2004, and again on October 22, 2004, Ford sent plaintiff letters advising him that because the requested documentation had not been received, he was responsible for repaying the benefit overpayment in the amount of $15,168.35 by September 24, 2004 or Ford would begin deductions of $100 from each paycheck until the amount owed was paid in full.  (AR 0010, 0027-0031).  The letters also advised Plaintiff that he had 180 days from the date of the letters to appeal. (Id.).  When plaintiff

9

did not respond to these letters, Ford began deductions for the benefit overpayment in November 2004. (AR 0010, 0026).

On January 13, 2005, Ford received a copy of plaintiff's 2003 federal tax return, which identified plaintiff's filing status as "Married Filing Jointly" and claimed exemptions for his twin daughters, Mecca Muhammad and Medina Muhammad. (AR 0010, 0125-126). On February 3, 2005, Ford received an "altered" copy of plaintiff's 2002 federal tax return, which again identified plaintiff's filing status as "Single," but this time listed two exemptions. (AR 0010). Neither tax return claimed an exemption for plaintiff's daughter, Fatimah. (Id.). Ford sent plaintiff a letter advising him that the 2002 and 2003 tax returns that he provided could not be accepted due to conflicting information. (AR 0124, 0010). Ford also told plaintiff that because of the discrepancies, it would require certified copies of his 2002 and 2003 tax returns to be sent directly from the Internal Revenue Service ("IRS"). (Id.).

In the meantime, Ford conditionally reinstated coverage for plaintiff's spouse, Halima, effective January 1, 2005. However, Ford told plaintiff that if he did not provide the requested documentation by April 15, 2005, his spouse would be removed. (Id.).[9]

### 4. The 2007 Audit - Dependent Spouse and Twin Daughters

During a 2007 dependent audit, Ford sent plaintiff letters requesting documentation (a copy of plaintiff's 2006 income tax return and proof of residency for dependents age 5 and older) to verify the eligibility of claimed dependents -- his spouse,

---

[9]Although plaintiff failed to provide the requested documentation by the deadline, Halima remained on his coverage until she was removed during a 2007 dependent audit, discussed below.

Halima, and his twin daughters, Mecca Muhammad and Medina Muhammad. (AR 0135, 0107). Plaintiff again failed to respond to the request for documentation. Accordingly, Ford removed plaintiff's dependents from his coverage effective May 1, 2007. (AR 0134).

### 5. Events Following the Audits

On June 11, 2007, plaintiff sent a letter to Ford in which he appealed the 2003 benefit overpayment determination. He enclosed only the first pages of his federal income tax returns (1040) for 1999, 2000, 2001, 2002 and 2004, and the first page of an amended federal income tax return (1040X) for 2003. (AR 0100-0113; 0009). None of the income tax returns were certified, and all were stamped "Internal Revenue Service RECEIVED Nov 21 2005." (See AR 0108-0113, 0009). Plaintiff's appeal letter referenced his spouse, Halima Yousri, as well as his daughters, Mecca Muhammad and Medina Muhammad, but did not reference his daughter Fatimah Muhammad, who (along with his spouse Halima) was the subject of the 2003 benefit overpayment, as discussed above. (AR 0100).

Plaintiff's daughter Fatimah was not claimed on his 1999, 2000, 2001, 2002 or 2004 federal income tax returns, and the first page of the 2003 amended tax return that he provided did not list exemptions. (AR 0108-0113, 0009). Each of these tax returns identified plaintiff as "Married Filing Jointly" with his spouse, Halima. (Id.). However, as noted above, Ford previously received copies of plaintiff's 2002 federal tax return that identified him as filing "Single." (AR 0009-0010).

The next day, June 12, 2007, Ford denied plaintiff's appeal, explaining that plaintiff failed to substantiate that Halima and Fatimah met the eligibility requirements

that "dependents should be able to be legally claimed as an exemption by the primary enrollee … under Section 151 of the IRS for Federal Income Tax purposes and must reside with the primary enrollee, unless the dependent is away at school." (AR 0091, 0057, 0009). Ford again explained that the benefit overpayment could be reduced if plaintiff would provide certified copies from the IRS of his 2002 and 2003 federal income tax returns to verify Halima's eligibility for benefit coverage for any part of the time period in question. (Id.). Ford also told plaintiff that Fatimah was ineligible from 01/01/2000 to 07/01/2003 because she had not been claimed as a dependent on Plaintiff's 2000, 2001, 2002 or 2003 tax returns, and the copies of the returns that Plaintiff provided were not certified and were not mailed from the IRS. (Id.). Ford also clarified in its letter that the benefit overpayment did not involve plaintiff's daughters, Mecca Muhammad and Medina Muhammad. (AR 0057).

On November 27, 2007, plaintiff responded to Ford's June 12, 2007 letter and demanded the return of the $15,168.36 benefit overpayment that had been withheld from his paychecks. (AR 00092). He did not include certified copies of his tax returns, or any other requested validating documentation with his letter. (Id.) Ford apparently construed plaintiff's letter as a second appeal request.

On January 17, 2008, Ford again denied plaintiff's appeal for benefits for the time period of 01/01/2000 through 07/1/2003 for Halima and Fatimah. (AR 0008, 0080-0082). In the letter advising plaintiff of its decision, Ford again requested certified copies from the IRS of plaintiff's income tax returns for 2000, 2001, 2002, 2003 and 2004 in order to verify the eligibility of his claimed dependents. (Id.).

On April 16, 2009, Ford received a copy of plaintiff's Judgment of Divorce from

Malikah Muhammad dated August 24, 1992. (AR 0055, 0058-0066, 0008).  Based on this documentation, which reflected that plaintiff had been court-ordered to provide health care for Fatimah until she reached the age of 18, Ford revised the ineligibility dates for Fatimah from 01/01/2000 - 07/01/2003 to 12/01/2000 - 07/01/2003 and refunded Plaintiff $1,757.93 -- the amount of benefits coverage that he had been entitled to for Fatimah until she turned 18 years old in November 2000. (AR 0034, 0053-0056, 0069).

On April 26, 2010, Ford received a letter from plaintiff requesting a review of all documentation related to the 2003 benefit overpayment.  Ford responded to Plaintiff's letter, advising him of the eligibility requirements for his dependents and explaining why Halima and Fatimah were deemed ineligible for coverage from 1/1/2000 to 7/1/2003 and 12/1/2000 to 7/1/2003, respectively. (AR 0008, 0047-0050).  Ford again requested certified copies from the IRS of plaintiff's 2002 and 2003 federal income tax returns to verify the eligibility of his claimed dependents for all or part of the above time periods. (Id.).

On August 12, 2010, an "EBO Committee" reviewed plaintiff's case and again denied plaintiff's appeal of its decision to seek benefit overpayment recovery from Plaintiff based on his failure to provide adequate documentation to verify his claimed dependents' eligibility. (AR 0033, 0042-0044, 0008).  The Committee advised plaintiff that it would not respond to any further appeal letters unless and until the requested certified copies of his income tax returns from the IRS were received.  (AR 0033, 0008).

Plaintiff thereafter sent Ford several other letters which in which he indicated he would pursue litigation against Ford.  (AR 0039, 0037, 0032).

To date, plaintiff has not provided the requested certified copies of his 2000, 2001, 2002 and 2003 federal income tax returns from the IRS to Ford.

### V. Conclusions of Law

#### A. Exhaustion

Ford argues that plaintiff failed to exhaust his administrative remedies for any claims relating to the 2000 and 2001 benefit overpayments. The Court agrees. "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit." Miller, 925 F.2d at 986; Weiner v. Klais & Co., 108 F.3d 86, 91-92 (6th Cir. 1997). Indeed, "[e]very employee benefit plan covered by ERISA is required to afford a reasonable opportunity to any participant whose claim for benefits has been denied full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

Here, the record shows that plaintiff did not exhaust his administrative remedies relating to the 2000 and 2001 benefit overpayments which followed the 2000 and 2001 audits, because he did not appeal the overpayment determinations. Plaintiff never responded to the ineligibility determinations for these claimed dependents -- even after a total of $8,586.25 was deducted from his paychecks for the resulting benefit overpayments and he received multiple letters advising him of his right to appeal. (AR 0003, 0017, 0004-0005, 0019, 0021). Plaintiff has not contended otherwise. Accordingly, to the extent plaintiff is claiming Ford wrongfully determined the overpayments in 2000 and 2001, his claims are not exhausted.

## B. Merits

Ford also argues that all of plaintiff's claims, unexhausted and exhausted, fail because the record shows Ford did not act arbitrarily or capriciously in any of its determinations. The Court agrees.

First, Ford's ineligibility determinations for plaintiff's children, Luqman Muhammad, Waaritha Muhammad, Ibn-Jaami Muhammad, and Mustafa Muhammad, and the resulting benefit overpayments, were rational and supported by substantial evidence in the record. As noted above, Ford had the right under the Plan to request, as it did in 2000 and 2001, that plaintiff provide documentation (a copy of his most recent federal income tax return and proof of dependent's residency) to verify the eligibility of his children between the ages of 20 to 25 whom he claimed as dependents (Luqman Muhammad, Waaritha Muhammad, Ibn-Jaami Muhammad, and Mustafa Muhammad). Plaintiff did not provide the requested documentation. Under the Plan, the "[r]efusal or failure to furnish … any … documentation necessary, when requested to do so, shall result in denial or withdrawal of eligibility for such dependent." Moreover, plaintiff had an obligation to notify Ford, through the NESC, of any changes to his dependent's eligibility. He did not do so. Because Plaintiff had failed to remove these claimed dependents once they were no longer eligible for coverage, Ford correctly determined that plaintiff was responsible for paying
the benefit overpayments of $5,273.79 and $3,312.46. Ford's administrative decision with regard to the 2000 and 2001 benefit overpayments is affirmed. See Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988) (A decision regarding eligibility for benefits is not arbitrary or capricious if the decision is "rational in light of the plan's

provisions").

Similarly, Ford's 2003 ineligibility determinations for plaintiff's spouse (Halima Yousri) and daughter (Fatimah Muhammad), and the resulting benefit overpayments, were neither arbitrary nor capricious. The decisions were rational and supported by the substantial evidence. As explained above, in 2003, Ford requested that plaintiff provide documentation (a copy of his most recent federal income tax return and proof of residency for dependents over the age of 5) to verify the eligibility of his claimed dependents. Plaintiff did not do so. As a result, Ford denied eligibility for Halima and Fatimah from 01/01/2000 to 07/01/2003. Because plaintiff failed to remove his claimed dependents once they were no longer eligible for coverage, Ford determined that he was responsible for paying a benefit overpayment of $15,168.35.

During the appeal process, which occurred over the course of several years, Ford received three conflicting copies of plaintiff's 2002 federal income tax return: one identified Plaintiff's filing status as "Single" and did not list any dependents, another again identified plaintiff's filing status as "Single", but listed two exemptions, and a third identified Plaintiff as "Married Filing Jointly" with Halima and claimed exemptions for himself, his wife, and his twin daughters, Mecca Muhammad and Medina Muhammad. Ford then informed plaintiff that because of the discrepancies in his submitted documentation, it would require certified copies of his 2002 and 2003 tax returns to be sent directly from the IRS to verify his claimed dependents' eligibility. Plaintiff did not do so.

Regarding the documentation that plaintiff did provide following the audit, Ford noted that his daughter, Fatimah, was not claimed on his 1999, 2000, 2001, 2002 or

16

2004 federal income tax returns, and the first page of the 2003 amended tax return that he provided did not list exemptions. Ford later revised the ineligibility dates for Fatimah to 12/01/2000 to 07/01/2003 after receiving documentation from plaintiff that showed he had been court-ordered to provide health care for Fatimah until she reached the age of 18 in November 2000. At that point, Ford revised the ineligibility dates for Fatimah from 01/01/2000 - 07/01/2003 to 12/01/2000 - 07/01/2003 and refunded Plaintiff $1,757.93 -- the amount of benefits coverage that he had been entitled to for Fatimah until she turned 18 years old in November 2000.

As to plaintiff's spouse, Halima, Ford reasonably determined that Halima was ineligible from 01/01/2000 to 07/01/2003 because of the inconsistencies in the 2002 tax returns indicating that plaintiff was not married and plaintiff did not provide the requested documentation (certified copies from the IRS of his 2002 and 2003 federal income tax returns) to verify Halima's eligibility, as Ford requested. Based on this substantial evidence, Ford's administrative decision with regard to the 2003 benefit overpayment was not arbitrary or capricious. See Daniel, 839 F.2d at 267.

Finally, as to the 2007 ineligibility determinations for plaintiff's spouse (Halima Yousri) and twin daughters (Mecca Muhammad and Medina Muhammad), these decisions were also not arbitrary nor capricious. In the complaint, plaintiff alleges that, "[d]uring the year of 2007, Defendant refused to render payment for Plaintiff's wife's and twin's medical and dental bills." (Complaint at ¶ 17). However, plaintiff accepted a "buy-out" under the ESTEP and voluntarily terminated his employment with Ford effective January 1, 2007. (AR 0304). Under the terms of the ESTEP, plaintiff agreed to waive all claims to post-retirement health care and life insurance benefits and his

coverages under the H-S-M-D-V Program terminated "six months dating from the end of the month following the month in which the employee last worked." (AR 0303). Plaintiff's dental coverage terminated on January 1, 2007. (AR 0303).

Furthermore, the record reflects that plaintiff's wife, Halima, and his twin daughters, Mecca and Medina, were removed from coverage effective May 1, 2007 after he failed to provide a copy of his 2006 income tax return and proof of residency for his dependents age 5 and older as requested. Ford's actions were neither arbitrary nor capricious in light of the plain language of the Plan that provides, "[r]efusal or failure to furnish … any … documentation necessary [to substantiate the eligibility of a dependent], when requested to do so, shall result in denial or withdrawal of eligibility for such dependent." (AR 0181 at §10(a)(4)(ii)).

## VI. Conclusion

For the reasons stated above, while the Court is mindful of plaintiff's arguments, the deferential review of the administrative record requires by the applicable rules leads to the conclusion that Ford's decisions regarding the eligibility for plaintiff's claimed dependents were not arbitrary or capricious. Ford based its decisions on Plan provisions which it reasonably applied to the facts set forth in the administrative record.

Accordingly, Ford's motion for to affirm is GRANTED. A judgment shall enter in favor of Ford. This case is DISMISSED.

SO ORDERED.

Dated: January 12, 2012      S/Avern Cohn
                             AVERN COHN
                             UNITED STATES DISTRICT JUDGE

11-12694 Muhammad v. Ford Motor Co.
Memorandum and Order

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to Jaami S. Muhammad, 2627 Arrowwood Trail, Ann Arbor, MI 48105 and the attorneys of record on this date, January 12, 2012, by electronic and/or ordinary mail.

S/Julie Owens
Case Manager, (313) 234-5160